HOWARD S. HOIT ET AL., TRADING UNDER THE NAME OF HOIT, ROSE AND TROSTER, APPELLANTS, v. DAVID ZYSKIND, RESPONDENT.

Submitted October term, 1930—Decided May 15, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-CHARD and LLOYD.

For the appellants, *Smith & Slingerland.*

For the respondent, *Harold Simandl.*

PER CURIAM.

The action in this case was to recover a balance alleged to be due to the plaintiffs on a stock trading account. The plaintiffs are a firm engaged in the business of buying and selling stocks, bonds and other forms of securities, usually securities not listed on the stock exchanges, and according to the proofs in the case after a number of individual transactions had been effected between the parties what was called an open account was started in the month of August, 1929. Under the arrangement then made defendant was required to deposit cash or securities in some form to be held as collateral security for the purchase price of the stocks that might thereafter be bought. From time to time thereafter various stocks were ordered by telephone, and as the orders were filled the certificates would be placed in an envelope, defendant's name placed thereon and slips containing his name and his interest in the securities attached thereto. Confirmations would be forwarded to him and acknowledged. These various confirmations were offered in evidence together with the account.

When the financial disaster in October, 1929, came, the plaintiffs' proofs were that they called for additional collateral; the defendant was unable to comply therewith and ordered the securities held for him sold at the best price obtainable. This was done and the balance already mentioned resulted.

The learned trial judge deemed the transactions nothing more than a course of gambling on the rise and fall of the stock market and on this ground entered a nonsuit. We think this was error. From the evidence produced the jury could find that the purchases were *bona fide* and were made either for investment or speculative purposes. The proofs show that the securities purchased were at all times available to the defendant and deliverable upon the payment of the

purchase price. There was nothing in the case to suggest that the contract between the parties contemplated a mere gambling arrangement for the settlement of differences in market price. The case falls within the rule declared by the courts of this state in earlier cases, such as *Flagg* v. *Baldwin,* 38 *N. J. Eq.* 219, and *Kendall* v. *Fries,* 71 *N. J. L.* 402. As was said by the Court of Errors and Appeals in the former case and reiterated by this court in the latter case: "The act [to prevent gambling] is not intended to interfere with the right of buying and selling for speculation. The line is to be drawn between what is legitimate speculation and what is unlawful wager. When property is actually bought, whether with money or with credit, the purchaser and owner may lawfully hold it for a future rise and risk a future fall. With such transactions, the law does not pretend to interfere. They are within the line of lawful speculation."

Tested by this rule it seems to us that the transactions between the plaintiffs and the defendant were not of such a character as to indicate that they came within the bar of the statute.

The judgment is reversed and a *venire de novo* awarded.